## LIDDELL v. LEX

———

(February 13, 1928.   Opinion and Decree.)
(March 12, 1928.   Rehearing Refused.)

———

*(Syllabus by the Court)*

1. **Louisiana Digest—Landlord and Tenant —Par. 59.**
The lessee is liable only for such repairs to the leased premises as are set forth in Article 2716 of the Civil Code.

2. **Louisiana Digest—Landlord and Tenant —Par. 65, 66.**
Under Civil Code Arts. 2692, 2693, lessor is liable to lessee for injuries to lessee, because of failure to keep building safe.

3.   Louisiana Digest—Damages—Par. 104;
     Appeal—Par. 625.

A judgment for two hundred fifty ($250.00) dollars for damages to plaintiff caused by plaster falling from the ceiling will be affirmed where the plaintiff was confined to bed three weeks and continued to suffer from time to time thereafter.

Appeal from Civil District Court, Division "C." Hon. E. K. Skinner, Judge.

Action by Mrs. John W. Liddell against Louis M. Lex.

There was judgment for the plaintiff and the defendant appealed.

Judgment affirmed.

H. W. Robinson, of New Orleans, attorney for plaintiff, appellee.

Dart & Dart, of New Orleans, attorneys for defendant, appellant.

JONES, J.   Plaintiff, a tenant under a verbal lease by the month, sues defendant, her landlord, for five thousand ($5,000.00) dollars, damages for injuries received when plastering fell, on May 23, 1923, from the ceiling of dining room in house 1030 Annunciation Street.

Plaintiff avers that she was put to bed immediately after the accident, expectorated blood, suffered acute pain and great nervous shock and was under medical treatment from May 24th to August 1, 1923; that defendant was guilty of gross carelessness and negligence in not keeping the premises in repair and particularly in not having the plaster in the ceiling of the dining room maintained in reasonably sound condition.

Defendant's answer admits lease, but denies the fall of plaster and all damages with special plea of contributory negligence under averment that if the plaster fell as alleged, plaintiff was responsible therefor, because she refused to allow respondent to make repairs of any character to the premises during her occupancy.

Both parties prayed for a jury trial.

On the issues thus presented, the jury returned a verdict in favor of plaintiff for the sum of two hundred fifty ($250.00) dollars and defendant has appealed.

We give a brief synopsis of the voluminous testimony.

Plaintiff, her two daughters, Mrs. Grace Richardson and Miss Etturia Liddell, her friend, Mrs. Keenan, and her boarder, Mr. N. R. Peart, all testify substantially as follows:

They were at supper about seven p. m. on May 23, 1923, when plaster fell from the ceiling, striking Mrs. Richardson and Mrs. Liddell, who was knocked to the floor, rendered unconscious by the blow; plaintiff was put to bed at once and was kept there by her physician for three weeks; although a small piece of plaster had fallen from the ceiling in February, 1923, and the surrounding plaster had sagged a little, defendant had proved obdurate to all demands for repairs to the ceiling, either by flat refusals or illusory promises to attend to it later, meanwhile assuring them he considered it safe; on the night of the accident he had been called in to see the condition of the room, but had made light of the entire matter; the physician swears he was summoned on the morning of May 24, 1923, to see Mrs. Liddell, whom he found in bed suffering from hemoptysis, the technical term for spitting blood; he saw no contusions on her body and prescribed narcotics and rest; she was an elderly lady, about seventy years old, who had suffered from "bronchitis", a disease akin to tuberculosis, and the falling of plaster from the ceiling on her

back and head would cause this "hemoptysis"; he visited plaintiff every day for about five or six times and afterwards every three or four days for about two months; her nervous system was "shocked" by the impact and the condition due to such "shock" lasts longer in old people; "once in a while she still (namely on March 26, 1925), spits up blood, but very little"; this condition might be permanent; that she had a weak heart and weak lungs before the accident, which predisposed her to hemoptysis, but she did not have this trouble before and the deduction is that it resulted from the injury.

The testimony of plaintiff, her daughter, friend and boarder is confirmed by a photograph taken shortly after the accident, showing the broken place in the ceiling whence the plaster had fallen.

In support of his denial of the fall of the plaster and consequent injury to plaintiff, defendant offers no positive testimony to contradict the positive affirmative statement of the above named witnesses, but seeks to show by various slight discrepancies in the statements of the above witnesses that the whole charge was trumped up to satisfy the personal spite of plaintiff and her family against defendant and his daughters, between whom there had been a violent row, followed by a libel suit.

In his argument defendant relies mainly upon two contentions, as follows:

(1) A suit against defendant similar to this, which had been simultaneously filed by Mrs. Grace Richardson, plaintiff's daughter, for physical injuries caused by the same fall of plaster and had been tried along with this case by the same jury, had been dismissed and no appeal had been taken therefrom.

(2) Defendant testifies that no demand was made and he knew nothing of the fall of this plaster until he received a letter from plaintiff's attorney five months later, although he lived and conducted his baker's shop next door to plaintiff and both she and her daughters constantly bought bread from his daughters, who handled his sales for him. In this statement defendant is partly confirmed by his daughters, who swear they had never heard of any demand on their father or any talk of plaster falling.

As the record shows that Mrs. Richardson suffered only minor injuries compared with those of her mother and as two witnesses testify that Miss Etturia Liddell had boasted to them during August, 1923, that they intended to make defendant pay, although Mrs. Richardson was not hurt, we cannot agree with the contention that the jury's verdict for plaintiff was based entirely on sympathy for her age and infirmities. We think on the contrary that plaintiff has abundantly proved her injury as alleged.

In support of his plea of contributory negligence, plaintiff and his carpenter testify that when they called during December, 1922, at the residence of plaintiff and offered to make all needed repairs, plaintiff said she did not need any. Plaintiff and her daughters deny this positively and certainly if she did this, plaintiff was a most unusual tenant, for it is generally taken for granted, as a foregone conclusion, that tenants want all they can get and still more from a landlord. Even if we take the statements of defendant and his carpenter on this point as true, the refusal to have a carpenter make repairs in December can hardly be said to have contributed to the fall of plaster the following May.

Defendant cites decisions in two cases, Rapon vs. Pays, 144 La. 285, 80 So. 539,

and Clay vs. Parsons, 144 La. 985, 81 So. 597, but they are not applicable. In the first case the tenant, without the consent of the owner and against his express instructions, took possession of the premises, which had been seriously injured by the storm of 1915 and were at the time being repaired. In the second case the tenant had expressly agreed to repair the broken steps, which caused the injury.

In the case of Klein vs. Young, 163 La. 59, 111 So. 495, and Lasyone vs. Zenoria Lumber Co., 163 La. 185, 111 So. 670, the Supreme Court has recently held the lessor liable for injuries to lessee because of failure to keep building safe, though defect complained of was not known to the lessor.

Furthermore, the tenant is not required to make repairs to the plaster of the ceiling.

See C. C. Art. 2716.

Butte vs. N. O. Terminal Co., 139 La. 945, 72 So. 513.

Ciaccio vs. Carbajal, 145 La., 886, 83 So. 73.

For above reasons the judgment will be affirmed, but as the defendant has died since the appeal was taken and his heirs have been made parties defendant in this Court, it will be necessary to rewrite the judgment.

It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Mrs. John W. Liddell, and against Anna Leo Lex, wife of John S. Lytle, Mamie Lex, wife of Malcolm C. Pierpont, Sophie Lex, widow by first marriage of Wm. R. Smith, now the wife of Robert L. Heintz, and Wm. F. Lex, jointly as the sole and only heirs of defendant, Louis M. Lex, in the sum of two hundred and fifty dollars ($250.00), with legal interest from judicial demand until paid and all costs.